19-3458 from the Western District of Missouri, Designworks Homes, et al. v. Thomson Sailors Homes, et al. Good morning, Your Honors, and may it please the Court. Gregory Keenan, representing Plaintiff Appellants, Designworks Homes, and Charles James. I'd like to reserve three minutes for rebuttal, if I may. You'll have to keep track of that yourself, please. Understood, Your Honor. Thank you. Your Honors, at the center of this appeal is a unique, award-winning design created by my client, lifelong home designer, Charles James. The design features a multi-story, triangular atrium intentionally positioned at the back rear center of the home, creating a alluring aesthetic effect when a viewer of the home walks in and opens the door. It's my client's signature design, his life's work, and it's an element he's repeatedly incorporated into the homes that he designs. In the copyright dispute below, the District Court committed legal errors in each of three issues on appeal. Access, similarity, and fees. First, on access, the District Court misapplied the legal standard of access. It asked for direct evidence that defendants actually viewed the work. Yet evidence of mere opportunity to view the work is enough to prove access. Second, on similarity, it applied an incorrect legal standard. It applied a sui generis, architect-specific standard under which it said that for architectural works, modest dissimilarities are more significant than in other works. Led astray by that understanding, it turned a similarities analysis into a differences analysis, failing to credit objective similarities between the works in question. Finally, on fees, the District Court applied a thoroughly discarded legal standard of a presumptive entitlement to fees. It said that copyright fees should be awarded routinely, and it's a rule rather than the exception. That's a Fifth Circuit standard in a case called micromanipulator that has been called into question by Supreme Court precedent and is incompatible and in tension with the text of Section 505 of the Copyright Act. While I await your Honor's questions, I'd like to address the law on access, one subcomponent of the proof necessary for copying. The District Court required proof that the defendants had actually seen or actually viewed the home in question. The District Court betrays this misunderstanding in several places when considering the evidence. For example, at ADD 5, the District Court said that there was no evidence that any of the defendants viewed Plaintiff's home. It also said there's no evidence that any of defendants knew or learned of Plaintiff's designs. But a leading treatise of copyright flags this error, and that error has also been pointed out by case law. NIMR on copyright states, some courts have defined access as the actual viewing or knowledge of Plaintiff's work. It calls this approach erroneous. So too, the Fourth Circuit in Bouchot said a copyright infringement, infringing Plaintiff need not prove the infringer actually saw the work in question. It is enough to prove that the infringer or his intermediary had the mere opportunity to see the work and that subsequent material produced is substantially similar. That aligns with this court's understanding and description of what access means in Moore. This court described access as the opportunity to view or to copy a work. Is it really stretching though, uh, uh, access a little too far to say that two of, I think it was two of the employees, um, went to a university of Missouri football game, which was also in Columbia and the campus is nine minutes away. It seems to me that access is potentially proven anytime you're in the same town as the work in question. I understand the concern. Um, and absolutely a bare possibility or a bare possibility, meaning pure conjecture or speculation or metaphysical possibility is not sufficient. Um, standing alone, you might take that to be, uh, insignificant, but there's a number of pieces of evidence that have to be viewed together. And together they actually, they, they permit a reasonable inference from a juror that there was an opportunity from some of the creative contributors to the infringing work to have access to the work. So taking what a bare possibility is not, uh, the, the, the, the hallmark example is if I were to come in and to say that someone, um, had access to my work because perhaps they had, uh, hacked my computer or tapped my phone and I have no evidence of that. There has to be something that tethers these particular defendants to this particular work. So it would be stretching it too thin, your honor to say, just because you were in the same neighborhood or in the same, um, in the same town that you could have access for any home that's also in that town. That would be a non-star standing alone. It would be insufficient, but there's additional evidence here. So first we have to keep in mind that these are competitors in the same industry. So it's not just any person. Um, for example, certain defendants are part of a trade industry that in Kansas city and that same trade industry, a chapter of it awarded a design to this particular plaintiff for his design. So there's, there's already another, something that kind of reigns in, um, the concern about overstretching access. It's not just that they drove to a, to a university of Missouri football game. It's that we know that they're going to Columbia. We know that both the plaintiffs and certain defendants belong to the same trade industry and that the plaintiff is winning awards for his designs from that trade group. Um, we know that he's promoting the plaintiff is promoting his work. So it's not just saying it's publicly available and therefore everyone has access. It's saying he's actually promoting and marketing his, his home. He's inviting people to come to open houses, which would distinguish it from just a house sitting on a corner. Um, we know, for example, that the scope of business, uh, that the, that the defendants are doing business and building homes in stretches as far East as Lake of the Ozarks. So in their briefing, they say, well, it's, it's a, it's a bare possibility in pure conjecture to think we'd end up a hundred miles outside of Kansas city. Um, but they're doing business that far East of Kansas city. So when you take all this evidence together, the question is, is there a mere opportunity that some of these defendants viewed the work that isn't, that's alleged to be infringed upon? Um, I think that's taken together. That's far afield from the, from the concern that just a home being out on the street is publicly available and that standing alone would create access. So the error in the district court's view is when it actually required proof, direct evidence and proof that they actually viewed, there has to be an opportunity. So the Taylor case might be instructive. This court's Taylor case, there was a question of access of, um, of greeting cards. And it was that the cards, the competitive, the competitors' cards were available, um, in local stores and that they noted that the greeting card business is competitive industry. Um, they didn't require proof that any of the competitors and defendants there actually went to that store. But there you have a wide distribution of the cards. It's like the, uh, it's like the long with the wind case as well. There's a wide distribution. And so the likelihood of actual access, uh, it's a great, great deal, a great deal larger. You don't have that case here. That's absolutely, that's absolutely right, Your Honor. And you would never have that case or almost never have that case in the context of an architectural work. Well, that doesn't. So maybe you just don't ever win. I mean, you know what I'm saying? That's not a knockdown argument. You've got to show a reasonable possibility that this person actually accessed it, did access it, not just as a reasonable possibility that somebody might have, but that this person, uh, accessed it. Isn't that correct? It is correct that you have to have a connection between the particular defendants and the particular work, but it's not true that they actually accessed it. It's the mere opportunity that they could have accessed it. Um, and to, to just, uh, is it, is it mere opportunity or is it reasonable possibility? Yeah. Mr. I understand. Sorry, Your Honor. I just, I hesitate to, um, just to say that it is, it is a mere opportunity. The distinction as used in the case law is between a mere opportunity and a bare possibility. And I thought it was reasonable possibility and bare possibility. Let me, let me ask a different question. Just because the district court noted that there had been no evidence of actual, uh, viewing doesn't necessarily mean that it was requiring that. That's yes, Your Honor. But because it was misapprehending the, the, um, the proper construction of what access is, it wasn't properly crediting the evidence as our I think what the district court was saying was that, uh, was showing that of actual access would be sufficient. I don't think that the district court meant that that was necessary. I agree that the district court was not saying that it was necessary to prove copying, Your Honor. I do, um, I do disagree respectfully that it was, um, that it wasn't saying that that was required for the prong of proving copying that constitutes you have to prove evidence of access with access being understood as the opportunity to have viewed it along with substantial similarity between the works. Okay. Thank you. Um, I also, uh, really appreciate the question though, about the distinction between mass production of recently added medium of copyright protected works. It was added in 1990 under the AWCPA. Um, the traditional, the traditional application of access doctrine might be difficult there given that homes are not produced at the scale of a novel or a movie, but at the same point, the, the protections afforded to copyright, uh, by copyright to architectural works and the access doctrine have to be flexible enough to respond to the actual reality of how the medium is used. The one fact that I do want to highlight in addition to the fact that we do have defendants going to the same town is that they're also part of a trade industry group that had awarded this particular plaintiff a, an award for his design. So that again, is another thing that narrows the scope from Judge Strauss is very legitimate concern about stretching access to an workably thin degree. Counsel, let me ask you about similarity. You don't have a ton of time left, so I want to make sure you can touch on it. Um, I think a lot of your brief has spent faulting the district court for noting the differences rather than noting the similarities, but when you're talking about similarity, obviously the differences are relevant. And so I want to address, I want you to address what's wrong with that analysis and how do you account for the numerous differences that the district court identified? So I'd respectfully push back on that characterization by citing to the Ninth Circuit's print text decision 6-7 and 6 F dot 3D at 851 where they say it is entirely immaterial that in many respects plaintiffs and defendants works are dissimilar, if in other respects they are similar. Here, you have to also appreciate the qualitative significance. It's not just the quantitative significance and it's one of the most bedrock principles of copyright law that an infringer can never get away with infringement by pointing to everything they didn't take. The analysis is actually between the similarities. So I agree, there is undeniably an interplay. The more dissimilarities you have of a work, the fewer similarities. But here we have objective similarities. We have similarity of medium, we have similarity of type, house, we have similarity of shape, and these are all things that at the first of the Hartman test, it's a high level of objective similarities. So the problem isn't that they just noted the dissimilarities, it's that it didn't account for the similarities, which is what it's supposed to be looking for under this court's Hartman test at the first step. I'd also like to just quickly touch on fees. The problem with the fee award is that it applies a discarded presumption of fee approach that was discarded by the Supreme Court on Fogarty, where it rejected the British rule awarding fees regularly or routinely. It said that the statutory may is discretionary and prescribes no rule. So when you say it's a rule rather than an exception, it must be awarded as a matter of course, what you're actually doing is applying the language of the civil rights fee shifting statutes or jurisprudence, which is precisely what the Fogarty case said you could not do. It distinguished copyrights fee shifting from civil rights fee shifting, even though they were nearly identical statutes. Didn't the district court, however, go through an analysis of factors that are relevant to, I believe, the test that you think it's more appropriate and come to a conclusion based on those? So perhaps the statement at the is that a possibility? It's not a possibility in light of the Supreme Court incurred saying that saying, although it is a discretionary multi-factored award, there are certain bright line rules that you can't violate. And one is the presumption of fees. With that, I'd like to remain the rest of my, reserve the rest of my time, unless there are more questions. Very well. Thank you, Mr. Keenan. Thank you very much. Court will hear from Mr. Good morning, Your Honors, and may it please the court. Chad Eggspuler on behalf of Ellswood Smith Carlson, I will be arguing the merits of the copyright issues. Co-counsel Scott Brown will be arguing the fees issues. Unlike the other Design Works appeals on the docket this morning, this case involves a single copyright registration. Plaintiffs Melrose work at 4306 Melrose Drive in implemented in more than 30 homes in the Kansas City, Missouri area, some 125 miles away, somehow infringed upon what they describe as the Melrose works triangular atrium staircase. We showed in the district court agreed that the two staircases were fundamentally different. A point that remarkably is all but conceded in appellants opening brief at 71 when appellants suggest their own case should have been dismissed at the motion to dismiss stage. We've also pointed out numerous forfeited theories raised by appellants for the first time on appeal that are not properly before this court. Ultimately, the district court correctly granted summary judgment because plaintiffs couldn't prove their case. And we're going to focus on two aspects of that this morning. The two essential elements that plaintiffs could not show. First, they could not show access, which this court has defined as a reasonable possibility, as Jeff Grunder noted, not bear possibility, not rank speculation. Second, they couldn't show striking similarity or even the typical standard substantial similarity. Now, as the court is aware, there are two paths to showing copyright infringement. The direct evidence method of showing copyright infringement is not present in this case here. The indirect method requiring access and substantial similarity is the path here. And actually, the correct similarity standard is striking similarity because plaintiffs failed to prove access. And that's recognized in this court's Moore decision in 1992, as well as Nelson in 1989. It's also a point that was acknowledged in plaintiff's own district court briefing at four joint appendix 283 and 287. And we've also provided examples to the court of what the courts have defined striking similarity to mean. For instance, the Thimbleberries case, which had the Xmas quilt patterns and the Midway Games arcade case that had knockoff Pac-Man games. Those courts have described striking similarity as virtually identical to the original work. Now, if it seems like something is missing from plaintiff's argument on appeal, it's because there is. They've skipped a step, so to speak. They've abandoned any argument that the district court's striking similarity analysis is wrong. And so in order to have a chance at prevailing today on appeal, they must be able to show that they proved access to the district court. This they cannot do. The sum total of briefing in the district court on access, and this is available at four joint appendix 288 to 289 and discussed at addendum five and six of the district court's opinion. They argued that the home was publicly accessible because it was on a public street. Well, that's true of almost any home in America that's not negated community. Now, if you dig deeper into their district court briefing through their statements or their responses to the statements of undisputed fact, but ideas that were not argued in the advertisements of the home, but they don't mention the interior feature of the home. They speculated that there may have been attendance at an open house, but there was evidence in the record that the plaintiff himself does not recall seeing any of the defendants and has no circumstantial evidence for thinking that they would have attended the open house. And they speculated that the defendants may have somehow been aware from some home design awards, but their briefing didn't specify what those awards were or give any circumstantial evidence to link that to the defendants. So if there's one thing that's missing in the words of opposing counsel, he said, there has to be something that tethers the facts to the defendants in the case. And there was nothing of the sort here. There weren't the facts in the record. They weren't argued to the district court and there was no circumstantial evidence linking it to our defendants here. The point raised by my friend on the other side here is that the district court somehow applied a direct evidence standard. And we know that's not true. Not only did the district court say it didn't apply a direct evidence standard, but it also compared to circumstantial evidence cases and said there was no circumstantial evidence in the case. And that's at addendum five and six of the opinion also. Specifically, it cited this court's Moore decision in 1992. That was an instance where industry insiders who are working with two different musical artists, one of which resulted in the theme song to the movie Ghostbusters, they had personal relationships. They worked in the same company. So there was an issue of corporate receipt that could be inferred upon multiple parties. And there were also one had access to sample tapes of the first artist at the same time that they were discussing the issue with the songwriters for the movie. Now, Judge Arnold asked an interesting question. And in the colloquy, it kind of was raising, can an architectural design ever prove access? Maybe it's just too difficult. Maybe that's just the law. In fact, we cited an example in the eastern district for Arkansas where a competitive home builder had a preliminary sketch of what would become copyright house plans. And that, combined with other circumstantial evidence in that case, supported an inference of access. And again, this court has defined access to mean a reasonable possibility, not a bare possibility, and here not rank speculation. So they couldn't prove access. And they've offered some new arguments, a little bit of remodeling of their case on appeal when they offer this football example. It was never argued in the district court. They offer no evidence to support why these admissions that two defendants had attended a somehow supports a reasonable inference that they did so in this time frame or that they somehow were in the presence or proximity of this home. Even the distance between the football stadium and the home is not in the record. It's just thrown into the brief. There's one other item for which I'm frankly not prepared to respond to because it wasn't briefed to the district court and I don't believe it was briefed on appeal, which is this partnership and an industry trade organization. And there's been no foundation for which industry trade organization this is and how that somehow circumstantially supports an inference that our defendants, that it was reasonably possible that they viewed the work. I'd like to briefly touch again, turning to the similarity problem. There's been no argument by appellants that they meet the striking similarities standard, even though they had knowledge below that that was the legal standard that applied. But what if the substantial similarity standard applied? Once again, plaintiffs can't prove their case. I believe Judge Strauss asked, what were the similarities in this home? And the best my friend on the other side could say was, well, there was the same medium, the same type and the same shape. Actually, and as the district court found, there was a different shape. It was a different feature and it was integrated differently into the home. If we refer the court to pages 8 through 10 in the response brief, pictures really do paint a thousand words and these pictures were in the record. There was a different shape. One set of stairs was a straight staircase. The other one had a 90 degree bend in. It's a different feature. Objectively speaking, one staircase has an open air atrium, but it's not the Melrose work. A child standing at the banister and dropping a parachute over the banister could picture the difference here. Because in the one, the parachute figure would drop to the ground in the triangular open air feature created by the stairs. And in the other, the parachute figure would just drop on the staircase. And that's because it was integrated differently into the room. In the Newbury model, the staircase was adjacent to or external from the living room. And you can see that in pages 8 through 10 of the record, there's almost a little in the living room. And in the Melrose model, it's just part of the back wall to the room. And so the only thing really mentioned in the brief, and appellants argued this at pages 47 through 53 of their brief, was that it had somehow the same 45 degree, 45 degree, 90 degree triangle shape. And even that's not entirely true. Objectively speaking, the only way you can get a home is if you were to stand in the middle of the room and disregard the rest of the room. Because that's because the staircase runs along the back wall of that diamond shaped room. The district court discussed all these differences because that's what was argued in front of it. And there were no similarities presented to the district court. I believe we cite from their district court briefing, they gave the court just this ipsy dixie conclusion. They're obviously strikingly similar. And that was it. Real quickly, in my last 20 seconds here, the 11th Circuit's Howard decision was not a sui generis standard or heightened standard for home architecture. There are numerous cases that cited this. The district court cases cited by appellants to the district court actually cite that standard too. But ultimately, the heightened standard comes from their inability to show access. And that required the striking similarity standard. For these reasons, we ask that this court affirm. Thank you, Mr. Expeller. Court will hear from Mr. Brown. May it please the court. I'm Scott Brown, appearing on behalf of Thompson Sailor Homes, and I will address the fee award. To prevail, appellants have to demonstrate that the district court in its Fogarty and Kurtzsang decisions, who carefully weighed and balanced the pertinent factors in his decision, and then who faithfully followed a proper lodestar method to establish the amount of fees to award, having found them available, somehow abused his discretion. But there was no abuse of discretion here. There was no clear legal error. Trying to find a hook in order to overturn the court's fee award, appellants point to the court's single sentence citation to the micromanipulator case from the Fifth Circuit. First, this court, in its applied decision, did not overrule micromanipulator, as suggested by appellants. This court found that it did not need to set the standard for awarding fees in a copyright case beyond saying that they should not be awarded as a matter of exception. And there is nothing wrong with that statement of the law. It's clear under... Well, it goes on, though. Wait a second. It goes on and says, and should be awarded routinely, which is pretty similar to of a matter of course. Your Honor, we briefed and we don't believe that those two things are synonymous. But in any event, it would raise form over substance to suggest that this court was so infected by that one carefully went through all of the curtsaying factors in his opinion. And he concluded, based on the factual determinations he made, that the plaintiff's case was at best frivolous and at worst brought in bad faith. That is not a finding by the court that defendants won and therefore, as a matter of course, I'm going to award fees. He found this to be a truly egregious case. And on that basis, he awarded fees. So there is no evidence from his decision that he was awarding fees as a matter of course. Isn't the better analysis than to say, well, that statement was probably incorrect, at least the routinely part of it. But we look at the entirety of the district court's analysis and that error really didn't affect the outcome at all. The district court still did the correct analysis. I think that's an accurate statement, Your Honor. That would be a proper analysis here. Clearly, the district court, he sets forth the curtsaying factors. He sets forth the facts that he is finding in his opinion, including that that plaintiff failed to deduce any evidence of access beyond a bare possibility, including that there were and that plaintiff did not respond to those differences during the summary judgment phase, including the fact that plaintiff did not prosecute the case, that they did not take a deposition, that they did not hire an expert, that they did not respond to multiple settlement offers, and that plaintiff's counsel attempted to withdraw because plaintiff had made it unreasonably difficult to prosecute the case. Those factors all mixed together with the frivolous nature of the case caused the judge to issue the fee award that he did, and that clearly was within his sound discretion following the curtsaying factors and the Fogarty factors. Having decided that fees should be available in a frivolous case, which is not out of the ordinary, the judge then turned to a proper lodestar analysis. He looked at the invoices that had been submitted by the defendants. He reduced the fee rate to comport with his own knowledge of a reasonable fee in the district. He refused to allow fees that were charged by law students, and he found that the remaining invoices were necessary to the defense. So his award of the amount of the fees was certainly well within his discretion. And finally, the issue that appellants raised that the case should have been dismissed at the 12B stage and that therefore defendants' efforts to develop its case were unreasonable is itself an unreasonable argument. Because we developed our case, we were able to adduce admissions by the plaintiff as to the differences between the accused homes and the registered works. We were able to establish that plaintiff had no evidence of access. We were able to introduce pictures of the internal internal pictures of the accused homes to show the differences. In all of that evidence that was adduced and made part of the summary judgment record, the district court was able to rely upon, colored his decision, and of course, we believe, led to the correct result. But to say that we should have engaged in speculative 12B practice as opposed to developing our case before we engaged in motion practice is not reasonable. I see my time is up unless the court has any questions. Thank you, Mr. Brown. Mr. Keenan, you have a little rebuttal time. Thank you, your honor. Regarding similarity, I would just like to quickly flag that the Second Circuit in Zaleski stated that courts should treat architectural copyrights no differently than other copyrights and that there is a concurrence in the 11th Circuit from Judge Rosenbaum acknowledging the split on how to treat architectural works, whether on equal footing to other types of works or not, between the 11th and the Second Circuit. The district court did treat them differently here, and we think that was legal error. I would also, on the fees issue, like to say that the application of the micromanipulator presumption remains at odds with the permissive may in the statute. The Supreme Court has acknowledged this, and if you trace the language of micromanipulator that's in the district court's opinion on order on fees, it's the same one that the curtsying court in a footnote took exception to with the Fifth Circuit's Hogan systems, and it is a civil rights fee shifting statute that was rejected in Hogan. Thank you, your honors. Thank you, Mr. Keenan. Counsel, we appreciate your appearance and briefing and arguments today. The case is submitted, and we will decide it in due course. Ms. Rudolph, would you announce our third case for argument?